Your honors, good morning. My name is Ethan Ballo, and this morning I'll speak on behalf of Walter Pierre Rausini. I'm going to watch my own clock. I'm going to do my best to save two minutes for rebuttal. And if I may emphasize at the end of my argument the importance of whatever decision the court makes, to please do so in a sealed memorandum, given the cooperation at issue and the danger to Mr. Rausini, if it's a published opinion. The last time Mr. Rausini came to this court, the court vacated his sentence and remanded the matter, finding the government in clear breach. It did so, clear breach of a Rule 35 agreement. And when it did so, it did so on a narrow ground, having confidence that the government, now being reminded of its responsibilities under Santabella, would turn straight corners and faithfully honor the Rule 35 agreement that the U.S. attorney himself, Robert Swan Muller III, entered with Mr. Rausini. But on remand, the government made a bunch of missteps, and in doing so, it did breach the agreement again. The Rule 35 agreement, which controls this case, is found 750 of the ER. It's 751. Page 751, paragraph 2, is going to be the critical paragraph. And that paragraph limits what the government can say. And it says, the United States, at the conclusion of Mr. Rausini's cooperation, quote, will only set forth the nature and the extent and significance of Mr. Rausini's cooperation. And the word only there's a semicolon, and then it says it won't recommend a specific reduction. Isn't that what it's referring to? No. It's what I interpret, Your Honor, will only set forth the extent and significance as an express limitation of what they will set forth. Suppose we don't interpret it that way. Suppose we say, because it's one whole sentence with a semicolon, what it's really saying is the government isn't going to make any specific recommendation. Well, I would think you have to give – I would say two things, Your Honor. One, I think the Court has to give – has to honor both sentences, and the rest of the paragraph also enlightens what it may do, which is it can also elicit the views of the Ellenberger family and the Estes family. It doesn't say you can't forward a letter from somebody else, does it? Oh, I would disagree with that. I think it does say – Where does it say you can't forward a letter from someone else? It says it will only do something and only has to have significance. What is the word – if you're taking the word only out, I would suggest, Your Honor, if you say they will do something and they won't do something. When you say you will only do something, that's a limitation. I think in Mondragon as well, it speaks to what a second sentencing recommendation is. Let me ask you another question. This letter that was sent to Judge Patel from the Bermans. I disagree with that, too, Your Honor. It was sent to the government by fax on November 1st. No, what I'm saying is this letter that we're talking about. Yes, it was faxed to the government on November 1st. It was faxed – hang on a second. Sorry, Your Honor. I apologize. This letter was – came into the possession of the government, right? Yes. From Berman. From Berman. It's addressed to Judge Patel, is it not? Yes. Okay. What are they supposed to do with a letter that's addressed to the judge? Throw it away or not forward it to the judge or – Well, definitely not forward it to the judge. They should have informed Ms. Berman that they had a limitation. If she wanted to write a letter to Judge Patel on October 30th, she may do so directly. If she had Judge Patel's address as a member of the community, she could do that. What the record shows – Is it okay if they tell him that? No. I think what they did and what the record shows on page 203 is Ms. Berman faxed it to the government and the government then e-filed it immediately so it could be considered the next day. And the letter vilified Mr. Rossini and was designed to limit the sentence. I'm not sure I'm making myself clear. I'm sorry. If they get a letter from somebody that's addressed to somebody else, here they – it comes into their possession, a letter addressed to Judge Patel. I don't see anything wrong with them forwarding it on to Judge Patel. They're not the one to whom it was addressed. It's addressed to Judge Patel. Oh. So they get a letter addressed to Judge Patel. They say, here, Judge Patel, this letter was addressed to you. I don't see anything wrong with that. I understand that's your position, Your Honor. We would respectfully disagree with it. We would suggest that when they sent the letter to Judge Patel – to themselves, they should have informed Berman of their limitations and they should have informed that they had to live by those limitations. And Ms. Berman could have supplied it to Judge Patel. But they supplied it and they asked Judge Patel to consider this letter as sentencing and we maintain on appeal that that was designed to limit the reduction. It's in violation of sort of the rules set down by Mondragon. I think Alcala Sanchez talks to this. I also think Witt talks to this. I can't find any case that says if they get a letter addressed to the judge, they can't forward it on to the judge. No, but I think those cases say they can't take acts to undermine the cooperation agreement. They have to strictly – They didn't argue it. They just forwarded it, didn't they? Well, they forwarded it so the judge could consider it, which is essentially arguing it. That's a please consider this letter demonizing Mr. Rossini when you consider tomorrow on November 2nd whether or not he should get a sentencing reduction. They knew the letter was about this case, didn't they? We thought the letter was about the case and they should have returned it to Ms. – my position is they should have returned it to Ms. Berman. They could have elicited the views of the Estes family. They could have elicited the views of the Ellenberger family. They could have used Ms. Berman when those families wouldn't do their bidding for these purposes. But the Berman letter, I don't think, is the only step where the government made a misstep. I think when they asked the U.S. attorney himself, Mr. Mueller, who's now the director of the FBI, and they said, Director Mueller, why shouldn't – why was Mr. Rossini sentenced the worst? And they invite Mr. Mueller to opine why he was the worst person in the case. When they asked to present the testimony of Assistant United States Attorney Hall, who's already – whose conduct in this case received some considerable heat by this Court. And Hall expresses that it was a horrible idea to use Mr. Rossini as a witness, that he didn't make the motion not only based on his judgment but on the judgment of supervisors and other U.S. attorneys and other supervising U.S. attorneys and acting U.S. attorneys, that this kind of presentation to Judge Patel was designed to make Judge Patel aware that they don't support this. Okay. Let's suppose when they get a letter addressed to the judge, you're right, they can't forward it on to the judge. Okay. Okay. Let's assume that. The judge got the letter and she says on the record, I'm not going to consider it. Yes. Why isn't it harmless then? Because there was no harmless error under Santabello and Alcala-Sanchez. And Santabello is very clear. In Santabello, the judge said, I don't take what the prosecutor says. I'm going to ignore it. The Supreme Court said, that doesn't matter. In Whitney, the prosecutor submitted the wrong sentencing chart. Could you talk a little slower? I'm having a hard time following you. I'm sorry, Your Honor. In Whitney, based on Santabello and Alcala-Sanchez and Imadragon, this Court has said there's no harmless error analysis. Even when the Court expressly says, I won't consider it, I'm not moved by the government, I'm not listening to the government, that it's integrity of the judicial system issue here. And it's the importance of when the government makes a promise that they have to follow it. And when they don't, if the defendant raises his hand, he gets to go back before a new district judge to do it again because the government has to turn square corners when it enters an agreement. Well, that presumes the judge actually read it, right? Well, I would I mean, you can't have a, you can't, there's nothing that's affected in the judicial process if the judge doesn't even read the letter. If she was never, yes, if she hadn't read it. But Judge Patel's comments both on the 2nd of November and the 7th of November, I would respectfully suggest on this record, show good facility with the letter. She referred to Berman as a crime victim, as the government had urged. As we now know, the government has abandoned that defense because it's simply not a crime. And Judge Patel did read the letter. But she didn't say she read the letter. I mean, one might infer that. But you'd agree that if she didn't read the letter, then harmless error analysis could apply. Maybe not to that one. But I think, I'm not sure that's true because I think by submitting it, they stand in breach. And it's the government's conduct which is, for want of a better term, on trial here or being evaluated. It's their conduct. And by submitting it, they took an act in breach. Whether she read it or not, I would contend that by breaching their obligation,    and it's referred to the district court, and it is referred to Mr. Rossini, he can object and say we have to do that again. And he can... Robertson Well, what's the district court supposed to do if the government tries to introduce evidence that's clearly inadmissible and inappropriate? I mean, at that point, if you follow the logic – and I understand why the cases say this, but you basically end up disqualifying every single judge if they keep doing it, right? Unless and until this Court gives some firm guidance and says what's going to stand on remand and how they have to comport themselves and they have to get it right, because you're exactly right, Your Honor. They can't... But we are reversing the district court. And so my question is, what's the district judge supposed to do if the prosecution says we want to introduce a letter from X and we know it's inappropriate? If she says, no, I'm not going to admit it and I'm not going to see it, what's wrong with that? If she did that and the defendant didn't complain, it would stand. I think that the defendant in this right, if he feels there's a breach, if he identifies it, he's entitled to relief. I'm going to try to save a minute and ten if I may, Your Honor. Thank you. Jenny Ellickson May it please the Court, I'm Jenny Ellickson and I represent the United States in this appeal. Since this case was last before the court, the government has fully complied with all of its obligations under the cooperation agreement. I'd like to begin by addressing the Berman letter. The cooperation agreement did not prohibit the government from submitting letters to the court from people who believed that they had been affected by the defendant's crimes. And in fact, the government may have had a statutory obligation to submit the letter.  That's doubtful, isn't it? She's not a victim. Well, the definition of crime victim in the Crime Victims' Rights Act is relatively broad. The contents of the letter suggest that Ms. Berman didn't. Do you want us to expand the universe of crime victims in this case? No. No, Your Honor. And the court doesn't need to go there. Because if we do that, that's the natural consequences. You're going to open up a whole lot of crime victim testimony that previously did not fall within the act. Yes. And the court does not need to do that because. I know we don't need to do it. You suggested that your letter was justified by it. What do you want us to do on that? It's a secondary argument, Your Honor. The first and most important point to make about the letter is that it was not a breach of the cooperation agreement, that there was. Let me interrupt you for a second. I'm sorry. The problem I have with that is that the government agreed to move for a reduction in sentence. And the letter says there should be no reduction in sentence. So by submitting the letter, the government seems to implicitly endorse the notion that there should be no sentence reduction. That's my problem with the Berman letter. So tell me, why shouldn't I be concerned about that? The prosecutor was very clear when she submitted the letter that she was not endorsing the contents of the letter, that she was, in fact, only submitting it to ensure that she was complying with whatever statutory obligations she may have had. She did not ask the district. I forget that. Where did she mention statutory obligations? She mentions that at several places, Your Honor. At ER 83, she says there's a Victim's Bill of Rights, Your Honor, that entitles victims to be present at all stages of the proceedings and to be heard in court. I'll hold that to the victim. Yes. If that's justification, I don't think it helps you much. Well, Your Honor, whenever she spoke to the letter, she explained that she was doing so out of concern for the statutory obligations she had under the statute. She did not make Let's assume for the sake of discussion there's no statutory obligation to forward to give standing to the mother of a co-defendant, okay? That's who she is, right? Yes, Your Honor. Okay. Let's stipulate to that for the sake of argument. What other justification is there for sending the letter? Well, the principal issue before the Court is whether the government breached the cooperation agreement. And so the question is, did anything in the cooperation agreement prohibit the government from doing that? There are three obligations on the government during the remanded proceedings. The first, which the Court has already been discussing, is whether the government presented the extent and significance of the defendant's cooperation. The second is that the government could not make a – recommend a specific reduction in sentence. And third, the government had to elicit the views of the Estes and the Ellenberger families. I submit that the letter violated none of those provisions. With respect to Judge Thomas's concern that the letter constituted a recommendation, the context in which the letter is submitted makes it clear that this was not the government attempting to use Ms. Berman as a proxy to submit views that were actually the government's. The government did not express a preference for the Court imposing a – no reduction at all and, in fact, repeatedly urged the Court to give the defendant a reduction because he had, in fact, provided valuable assistance to the government. The government repeatedly said that the defendant's cooperation had been a factor that led to the guilty pleas of his two co-defendants. The government was uniform and unequivocal in making those statements to the Court. Let's assume for the sake of discussion the government should not have forwarded to Judge Patel the letter addressed to Judge Patel that came into their possession. Okay? Let's assume government should have sent it back the way Mr. Ballow argues. Or not filed it. Or not filed it. Why – what is the significance of Judge Patel's statement that I'm not going to consider it? Well, it meant that there was no bell to unring, Your Honor. And the record supports the fact that Judge Patel did not, in fact, read the letter. She may have referred to Ms. Berman as being a victim, but that was based on representations that the government had made in court. There was nothing that suggests that she went back on her promise not to read the letter. She didn't say she wasn't going to read the letter. I mean, I'm puzzled by this record because, at least as I read it, it seems to me that she read it and said I'm not going to consider it because she refers to the content. Now, I grant you she could have discerned that from the comments, but she's a pretty careful judge, and my guess is she reads everything. I'd be surprised if she didn't read anything in front of her. If she didn't read it, she'd probably say it for the record. Your Honor, I – my memory is that she said that she had not reviewed the letter, but, of course, the court should review the record itself. Well, let's assume she read it. Let's take both possibilities. If she didn't read it, your argument is then it's a complete harmless error, right? Yes. There was no bell to unring. If she did read it, then what's the consequence? Well, if she did read the letter, it still would not be a breach because the government didn't endorse the contents of the letter. But you don't have to endorse the contents. You can – under your theory, you could present a witness that tells the judge there should be no sentence reduction at all, and that would not be a breach. And that seems to be contrary to our case law. Well, Your Honor, here the government wanted to make sure that it was complying with whatever statutory obligations it may have had. And the fact that the letter did contain language that argued against a sentencing reduction, it doesn't become the government's position until the government adopts the language in that letter. The government did not do that here. The government did not endorse the contents. The government did not urge the district court to consider the letter and, in fact, said that it was not properly before the district court's consideration during the Rule 35 proceedings. The government said that neither that letter nor a letter submitted by the defendant's mother were appropriate for the Rule 35 consideration by the district judge. Under the circumstances, there's just – the record just does not support the conclusion that the government was attempting to use the letter to circumvent its obligations under the cooperation agreement. I'd also like to briefly address the defendant's suggestion that the government breached the plea agreement by presenting testimony from, for example, Assistant U.S. Attorney David Hall. The record shows that, in fact, it was the defendant who moved to have AUSA Hall testify. The government opposed the motion, saying that they did not believe his testimony was relevant and that, in fact, the testimony – the government's presentation on the Rule 35 issue was already complete without that testimony. So to the extent that AUSA Hall testified, it was at the direction of the district court and at the request of the government. And at that point, of course, he had an obligation to provide truthful testimony about his views of the defendant's cooperation. Mr. Ballow began by asking us to file whatever decision we make under seal. Do you have an opinion on that? We don't oppose that, Your Honor. Was the previous ruling filed under seal? It was. And the briefs in this case are also under seal. So the Court should do what is appropriate. But we do not oppose a sealed opinion. Depending on what we say. That's true, Your Honor. It's within the discretion of the Court, of course. Well, let me return to the Berman issue for just a minute, because I now have in front of me the transcript. The defense argues there was a breach of the obligation by receiving the letter. And here's what Judge Patel's response is. Judges hear things all the time that they have to un-ring counsel. How do you conclude that she didn't read it when she says judges hear things all the time that they have to un-ring? Because he says, his argument is they've rung a bell that can't be un-rung. And she basically says, well, that happens all the time. I have to strike it and not consider it. Yes, I see what you mean about that portion of the transcript. There is another portion of the transcript, though, where she talks about how she is striking the letter and that she's not considering it. And I believe she says at that point that she has not reviewed it. She says, I'm not looking at them, I'm not considering them, and they're deemed stricken. She also said it wasn't a breach, right? Yes, Your Honor. How could she determine if it was a breach or not a breach without reading it? That's a good question, Your Honor. But it could be that she looked at the terms of the cooperation agreement and concluded that the cooperation agreement did not prohibit the government from submitting letters from people who had views or who felt that they had been affected by the defendant's conduct. So based on the language of the case. So if she read the letter and said that it was a breach, and she read it, then what? Can it be harmless because she says I'm not going to consider it? Well, if she did, in fact, read it under this Court's precedent, that wouldn't matter probably. I think there would not be harmless error review at that point. I'm happy to answer. The government really didn't disavow it completely. I mean, here's the argument. There's no effort on the government to sponsor the letter other than bring it to the Court's attention, which is, frankly, our obligation under the Victim Witness Act. That's all we did. And we were very clear with the Court about who the one was, what respect it was. And then here's the argument. And the Court has every right to give it as little or absolutely no consideration the Court intends to do now. It doesn't say the government is disavowing the letter. It doesn't. Well, it doesn't say the government is disavowing the letter, but the difficulty the government was facing is that if the government, in fact, had a statutory obligation to submit the letter, then it's difficult for the government to then tell the Court, you know, that you cannot do anything with this letter at all if it has no statutory obligation to forward a letter from a co-defendant's mother. Okay? It just gets a letter addressed to the judge that comes to the U.S. attorney instead of being sent to the judge. I'm having a hard time figuring out what the prosecutor is supposed to do. I mean, the prosecutor has a few options. The prosecutor can take the letter addressed to Judge Patel and throw it in the trash. The judge, the U.S. attorney, can forward it on to Judge Patel with basically a note like, it did. This came to us. It should have gone to you. Or they can send it back to the senator saying, mail it yourself to Judge Patel. I mean, that's, to me, I don't think you have any statutory duty, but I'm kind of wondering what the reasonable thing to do is if someone mails to the prosecutor a letter. I'm not going to. I see that I'm out of time. I'm happy to quickly respond. Why don't you answer my question, please. Your Honor, I'm not sure what else the government could have done. I suppose the government could have alerted the court to the fact that it had gotten this letter, but even letting the court know that it had received a letter from someone who believed herself to have been negatively affected by the defendant's crimes could arguably have the same prejudicial effect that the defendant is concerned about. So under the circumstances, I'm not sure what else the government could have done that would have had a different result. Let me ask you this. You don't forward all the letters you get from people who are writing you about punishment to the court, do you? Your Honor, I'm not sure of the answer to that, but if they're going to be... No, but as a practical matter, when you submit evidence on sentencing or a Rule 35 hearing, it's the government's submissions. You don't take all the letters you may get from anybody on the street that are sent to the U.S. Attorney's Office advocating a particular form of punishment and pass them on to the court, do you? Well, this letter wasn't addressed to the U.S. Attorney's Office. I'm just saying you don't do that. In the typical case, in a typical sentencing case, there's a probation officer who's preparing a pre-sentence report. That wasn't the case here because of the context. So there was... I understand Judge Thomas' question. Do you get a lot of letters addressed to the judge that get mailed to the U.S. Attorney by mistake, or is it... Well, that's the... I'm not sure what the answer to that is, Your Honor. Are you aware of that ever happening? I'm personally not aware of it happening. It doesn't mean it hasn't happened, but I'm not aware of it. Did the government solicit this letter? No, Your Honor. To fully address that allegation, I would have to discuss issues outside the record, but I... I'll take your word for it. Yeah. Very good. Any further questions? I'll give you two minutes for rebuttal. Thank you. Two minutes, yeah. Feels like the end of a basketball game. Two minutes, they announce it. This is a tremendous warning. Thank you, Your Honor. I don't feel like I need to go fast because... I'm always told to slow down. I haven't mastered it yet. I want to bring, go back to the point that Justice Thomas, Judge Thomas, excuse me, and Judge Silverman, you were talking about with the government about how the letter was sponsored. And I think we can go back before the page of the letter to look at the pleading, because the government submitted it on November 1st. And what the government told Judge Patel was, in anticipation of Defendant Rossini's Rule 35 sentencing hearing on November 1st, which was the same day, they really meant the next day, November 2nd, the United States Attorney's Office hereby submits this letter from the mother of Ali Mamadani, a co-defendant in the underlying drug conspiracy, and a friend of Lance Esses. They were submitting it for her review. And when Judge Thomas noted, when you made the point that when they backed off the letter it wasn't necessarily backing off of it, it's important to note that that was only after Mr. Rossini's trial counsel, Mark Vermullin, had objected to Judge Patel and said, that's in breach. This is a recommendation by proxy. And even then, they didn't fully back off the letter. Let me ask you, Mr. Rossini was convicted of two counts of Supplication to murder. And he received originally a 40-month sentence. Statutory max per count consent. Total of 40 months. Yeah, 40 years. 40 years, I mean, 40 years. And then she reduced it, Judge Patel reduced it to 35 years. Yes, Your Honor. What do you think the appropriate reduction should have been? Wow. That's a great question. I mean, he got more than a 10% reduction given to murders for hire. I think it's 12.5% reduction. I think if you looked at the U.S. Sentencing Guidelines charge that Mr. Vermullin sought to introduce to the court for an average cooperator, their sentence is usually, I think it was something that it's halved or something like this. I don't think that would be appropriate in this case. I think Mr. Rossini was looking for a 10 years off or something in that range. I don't, I don't, I think it's up to the jurist. I think Judge Patel was an excellent draw for him. I'm really wondering if we're doing him any favors, even if we send it back for another one. I mean, he got a pretty good, pretty good deal. He could do a lot worse if it goes back. That is an astute point, Your Honor. And every defendant who comes to this court and has to go back and go to the wheel for another district judge has been well aware that a new district judge will not be the Honorable Marilyn Patel and will evaluate this case by his or her lights and will make his or her decision about what's appropriate on a clean slate. What Mr. Rossini has asked us to come here for today is to get an opinion that says the government finally really has to honor this agreement, even if they didn't want to do it, even if everybody here disagrees with what Bob Mueller did. Bob Mueller went out and sought Mr. Rossini. Bob Mueller used Mr. Rossini to great effect, and he brought those guys in from the cold immediately. They didn't have to turn over to the BNE a raft of evidence about corruption that was going to make this trial a very interesting murder trial. On the day those documents came due, those two men signed up because they were afraid of Mr. Rossini's testimony. Their documents to Judge Patel and Judge Ilson under seal when Mr. Rossini was meeting with Mr. Mueller showed that they, before they even knew about his cooperation, were afraid of Rossini as a witness. And Mueller used it to fantastic effect. The government got a benefit. They won. There was no trial. We didn't have to worry whether he's going to be a bad witness because there was no trial. These guys folded it up. They took 25-year sentences, and the case went away. And Mr. Rossini, all he wants is this. And if you look at the agreement, and what I urge you to look at, this was negotiated hard between Rossini and Mueller. The first paragraph of the agreement talks about what it's confirming. Other paragraphs are what Mr. Mueller is reaffirming. This is the United States attorney who was a two-time killer. So what does Mr. Rossini want out of this? I mean, does he want us to say, you know, that they shouldn't have done it, but it's harmless error, or? No, he wants you to go through the breaches and give the government some clear directives so the problem that Judge Thomas identified, that they can go back. And because it's the United States, we can be on this merry ground, that they get it right, that we have a framework. Right. But I think, you know, listening to you and reading the breaches, it occurred to me, really, that your primary argument, I mean, in the real world, has to do with the testimony, not with the letter. I mean, it seems to me that the Berman letter is, I mean, it's more of a technical issue than it is. And we know Judge Patel didn't consider it. We know in the real world that it had absolutely no impact on her decision. Actually, can I respectfully disagree for a moment, Your Honor? Sure. I think the Berman letter is a combination of a pattern of conduct where the clear message Judge Patel got from day one, and this went on for three years, we don't support any reduction. And at every turn, the government made that clear to Judge Patel. So Judge Patel had that clear. Well, that's true. But, you know, the government doesn't have to be enthused about the reduction. Correct. But they can't signal to Judge Patel at every step they don't support it. That's the unified voice. And even if they make a deal they don't like, at the end of the day, they've got to suck it up and follow the deal and meet their obligations. And that's what makes for great lawyers and great people. And we expect the government to be great. Mr. Racine did. And he expects and deserves them to show up, suck it up, and say to the next jurist, here's what he did, here was the value, Your Honor, please determine its value and sentence him so this case may be closed forever. That's what should happen. Our questions are taking you over time. Any further questions? Thank you very much for your arguments. Thank you both. It's an interesting case, and we'll take it under submission. Thank you.
judges: Schroeder, Thomas, Silverman